UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN ORTIZ,

                              Plaintiff,                    **OPINION AND ORDER**

                    -against-                               15 Civ. 3479 (ER)

CITY OF NEW YORK, JULIO GONZALEZ, *individually
and in his official capacity*, and JANE DOE, *individually
and in her official capacity*,

                              Defendants.


Ramos, D.J.:

      Plaintiff Benjamin Ortiz ("Plaintiff" or "Ortiz") brought this action against the City of

New York (the "City") and police officers Julio Gonzalez and Jane Doe (the "Officer

Defendants") on May 4, 2015.  *See* Compl. (Doc. 1).  Plaintiff raised five claims:  false arrest,

false imprisonment, reckless investigation, and two claims for inadequate training and

supervision.[1]  On September 29, 2017, Defendants moved for summary judgment on all five

claims.  *See* Doc. 40.  For the reasons stated below, Defendants' motion is GRANTED.

## I.    FACTUAL BACKGROUND[2]

      On May 3, 2012 at approximately 8:01 p.m., an unknown individual made a 911 call to

report an argument coming from an apartment to the left of the elevators on the 11th floor of 735

---

[1] The Fourth Claim is specific to failure to train and supervise a "Defendant Police Officer Inoa;" this appears to be
a typographical error as there is no Defendant Inoa named in this case, nor is there a mention of an Officer Inoa in
the record before the Court.  *See* Compl. ¶¶ 31–35.  The Fifth Claim is broader, and alleges failure on the part of the
New York City Police Department to train all of its police officers with respect to warrantless entry of residences.
*Id.* ¶¶ 36–40.

[2] The following facts are drawn from Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Def.'s
Stmt.") (Doc. 43), Plaintiff's Rule 56.1 Counter-Statement ("Pl.'s Stmt.") (Doc. 44), and the parties' supporting
submissions.  Any citation to the parties' 56.1 Statements incorporates by reference the documents cited therein.

Magenta Street in the Bronx. Defs.' Stmt. ¶ 4.[3] At that time, Ortiz lived in Apartment 11B of 735 Magenta Street with his cousin, Dominique Coe ("Coe") and his mother. *Id.* ¶ 2, Pl.'s Stmt. ¶ 2. Apartment 11B was one of four apartments to the left of the elevators. Defs.' Stmt. ¶ 3, Pl's Stmt. ¶ 3.

At 8:10 p.m., New York City Police Officer Gonzalez arrived at 735 Magenta Street. Defs.' Stmt. ¶ 5. A friend of Ortiz's happened to be leaving Apartment 11B at that time, and when he did, Officer Gonzalez entered the apartment without receiving permission to do so. *Id.* ¶ 6. While Officer Gonzalez was in the apartment, Ortiz had a verbal argument with Coe and her sister Ashley ("Ashley"). *Id.* ¶ 7. Officer Gonzalez then exited the apartment with both women while Ortiz remained inside to watch television. *Id.* ¶¶ 8–9. According to police reports and complaints filed later, Coe informed Officer Gonzalez that Ortiz had pulled her hair and punched her several times. *Id.* ¶¶ 12–13.[4] Officer Gonzalez also observed a scratch on Coe's face. *Id.* ¶ 14. A few minutes after leaving with Coe and Ashley, Officer Gonzalez returned and asked Ortiz to step into the hallway, at which point he was arrested. *Id.* ¶¶ 10–11. Ortiz was arrested for assault in the third degree; however, the Bronx District Attorney's Office declined to prosecute Ortiz because Coe did not wish to press charges. *Id.* ¶¶ 15–17.

## II. LEGAL STANDARD

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and]

---

[3] The 911 call was classified by the operator under the Code 10-52 D1. That code indicates a non-crime incident involving an argument. Pl.'s Stmt. ¶ 4.

[4] The 'Time of Report' on the NYPD Domestic Incident Report was 10:01 p.m. and the "Reported" time on the NYPD Complaint Form was 10:15 p.m. Pl.'s Stmt. ¶ 12. From this, Plaintiff asserts that Coe did not make these allegations until over an hour after Ortiz's arrest at 8:54 p.m. *Id.* ¶¶ 11–12.

other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v.*

*Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## III.    DISCUSSION

### A.    False Arrest, Imprisonment, and Reckless Investigation Claims

Plaintiff brings a false arrest claim pursuant to § 1983 for his arrest on May 3, 2012.  "[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause."  *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  In order to establish a § 1983 claim for false arrest, a plaintiff must show:  "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Generally, confinement is privileged when there is probable cause to effectuate an arrest.  *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or § 1983.").  The same is true for claims of false

imprisonment. *See Jones v. J.C. Penny's Dept. Stores Inc.*, No. 03 Civ. 920A (RJA), 2007 WL 1577758, at *10 (W.D.N.Y. May 31, 2007) *aff'd* 317 F. App'x 71, 73–74 (2d Cir. 2009)).

Plaintiff argues, however, that Officer Gonzalez needed both probable cause and exigent circumstances to arrest Ortiz because he was in his home when Officer Gonzalez entered without a warrant and ordered him to go into the hallway. Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mem.") (Doc. 46), at 7–8. Under *Payton v. New York*, police officers entering a residence without a warrant may only lawfully do so if there is "probable cause plus exigent circumstances." *Loria v. Gorman*, 306 F.3d 1271, 1283 (2d Cir. 2002) (quoting *Kirk v. Louisiana*, 536 U.S. 635, 637 (2002)). Plaintiff argues that because Ortiz was ordered to leave his residence by Officer Gonzalez, and was subsequently arrested in the hallway, he was arrested in violation of *Payton*. Pl.'s Mem. at 8. Plaintiff is incorrect. Ortiz does not assert that he was placed under arrest while still in his residence; he admits that he was standing in the hallway of the apartment when the arrest occurred. Although Plaintiff cites *United States v. Allen* for the proposition that "threshold arrests" require probable cause plus exigent circumstances, *Allen* is expressly limited to a scenario in which "officers approach the door of a residence, announce their presence, and place the occupant under arrest when he or she, *remaining inside the premises*, opens the door in response to the police request." 813 F.3d 76, 85 (2d Cir. 2016) (emphasis added). In that case, the Second Circuit emphasized that "if the rule of *Payton*, and the fundamental Fourth Amendment protection of the home on which it is based, are to retain their vitality, the rule must turn on the location of the [arrestee] . . . at the time of arrest." *Id.* Here, that location was outside the protection of the home, and therefore exigent circumstances were not required.

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The test is "objective rather than subjective." *Id.* at 154 (citing *Devenpeck*, 543 U.S. at 152–53).

Plaintiff argues that Officer Gonzalez did not have probable cause to arrest Ortiz solely on the basis of the anonymous 911 call. *See* Pl.'s Mem. at 4. But Officer Gonzalez did not just learn of the anonymous 911 call; he also directly received a complaint about physical assault from Coe and personally observed the scratch on her face. Defs.' Stmt. ¶¶ 12–14. Police officers have probable cause to arrest when they receive information from a complaining victim regarding a crime. *Lora v. City of New York*, 14 Civ. 8121 (VEC), 2016 WL 4074433, at *6 (S.D.N.Y. July 29, 2016); *see also Virgil v. Town of Gates*, 455 F. App'x 36, 38 (2d Cir. 2012) ("A victim's identification of an assailant is, by itself, sufficient 'probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.'") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Therefore, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's false arrest and false imprisonment claims.

Defendants argue that Plaintiff's substantive due process claim—which is premised on the officers' investigation of the complaint against Ortiz—is duplicative of his false arrest and false imprisonment claims and must therefore be dismissed as well. *See* Memorandum of Law in

Support of Defendants' Motion to Dismiss ("Defs.' Mem.") (Doc. 42), at 8–9. The Second

Circuit has not recognized a right of investigation before arrest outside of the probable cause

requirement. *Virgil v. Town of Gates*, 455 F. App'x 36, 40 (2d Cir. 2012) ("If probable cause is

established, there is no constitutional right, whether under the Fourth or Fourteenth Amendment,

to demand further investigation before arrest or prosecution."). Plaintiff does not explain the

factual basis for his substantive due process reckless investigation claim in his summary

judgment opposition; in his complaint, however, he states that the basis for his reckless

investigation claim is that he "was never identified by anyone to the Defendant Police Officer, at

the time of the arrest, as having committed any crime or offense." *See* Compl. ¶ 29. As

indicated by the facts before the Court on summary judgment, Plaintiff was in fact identified by

Coe as the perpetrator of assault, and Defendants had probable cause to arrest him. The Court

therefore GRANTS summary judgment on Plaintiff's third cause of action.

### B.     Inadequate Supervision Claims

Plaintiff's final claims seek to hold the City liable for its deliberate indifference in

training New York City Police Officers. Defendants argue that Ortiz has failed to even identify,

much less put forward evidence of, a specific omission in the City's training and supervision of

police officers. Defs.' Mem. at 11. Plaintiff does not address these claims in his opposition.

"Municipal liability is at its 'most tenuous' when it rests on a failure to train." *Vincent v.

Winski*, No. 14 Civ. 7744 (VSB), 2018 WL 1441370, at *16 (S.D.N.Y. Mar. 22, 2018) (quoting

*Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To meet the deliberate indifference standard, a

plaintiff generally must show that "city policymakers are on actual or constructive notice that a

particular omission in their training program causes city employees to violate citizen's

constitutional rights" and that those policymakers "choose to retain that program" anyway.

*Connick*, 563 U.S. at 61. Anything less, the Supreme Court has said, "would result in *de facto respondeat superior* liability on municipalities." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (O'Connor, J., concurring in part and dissenting in part)).

Here, Plaintiff has made no attempt to explain how the City's training was deficient and has put forward no evidence of actual or constructive notice of constitutionally deficient training programs. Defendants' motion for summary judgment is therefore GRANTED with respect to Claims 4 and 5.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion is GRANTED. The Clerk of Court is respectfully directed to terminate the motion (Doc. 40) and close the case.

It is SO ORDERED.

Dated:     June 20, 2018
           New York, New York

Edgardo Ramos, U.S.D.J.